1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                     AT TACOMA

10   LETITIA DE VAWN STEWART,

11                   Plaintiff,                    CASE NO. 3:16-cv-05080 JRC

12         v.                                      ORDER ON PLAINTIFF'S
                                                   COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,

15                   Defendant.

16

17         This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 12, 17, 18).

21         After reviewing the record, the Court concludes the ALJ erred in determining

22   whether plaintiff's disability has ended. Specifically, the ALJ erred at step two of the

23   cessation analysis by failing to consider whether medical improvement of plaintiff's

24

severe impairments that were present at the time of the favorable disability determination

has occurred. Without a finding of medical improvement related to all of plaintiff's

severe impairments present at the time of the favorable disability determination, the

Court cannot determine whether the ALJ properly formulated plaintiff's residual

functional capacity and therefore the error at step two was harmful. Accordingly, this

matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the

Acting Commissioner for further proceedings consistent with this Order.

BACKGROUND

Plaintiff, LETITIA DE VAWN STEWART, was born in 1985 and was 22 years

old on the alleged date of disability onset of October 22, 2007 (*see* AR. 85, 90). Plaintiff

believes she finished the ninth grade (AR. 53). Plaintiff has no relevant work history

(AR. 22, 215, 291-92).

On June 8, 2010, an ALJ (hereinafter "the first ALJ") determined that plaintiff met

listing 12.04 and 12.08 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

416.920(d) and 416.925) based upon severe impairments of bipolar disorder, borderline

personality disorder, anxiety disorder, attention deficit hyperactivity disorder, cognitive

disorder, NOS, and polysubstance abuse in remission (AR. 81-89). After the

Administration initiated a disability review to determine if benefits should continue,

another ALJ (hereinafter "the second ALJ") determined that " . . . as of November 1,

2011, the claimant had the following medically determinable impairments: History of

cerebrovascular accident; bipolar affective disorder; anxiety disorder; posttraumatic stress

disorder; personality disorder; substance abuse disorder. These are the claimant's current impairments." (AR. 14.)

At the time of the hearing, plaintiff was living in an apartment with her husband and 10 month old daughter, with her son visiting on weekends (AR. 41).

PROCEDURAL HISTORY

The Court adopts plaintiff's uncontested Procedural History (*see* Dkt. 12, p. 2).

> This is a cessation case.  Letitia De vawn Stewart (hereinafter Stewart) was found disabled in a decision issued on June 23, 2010 by ALJ Strong after a hearing on June 8, 2010. (AR 81-89). The ALJ determined that Stewart met listing 12.04 and 12.08 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d) and 416.925).  (AR 87).  This was based upon severe conditions consisting of bipolar, borderline personality disorder, anxiety disorder, attention deficit hyperactivity disorder, cognitive disorder, NOS, and polysubstance abuse in remission. *Id.* The onset of disability was determined to be October 22, 2007, thus of longstanding duration. (AR 89).
> Eighteen months after the finding of disability, a disability review process was initiated, triggered by an anonymous tip and disability benefits were ceased. (AR 90-91, 115-27, 148-55). An administrative hearing was held at the Agency level after disability benefits had been ceased and the hearing examiner upheld the decision to end disability benefits. (AR 115-27).

Dkt. 12, p. 2

Plaintiff's requested hearing was held before the second ALJ on December 3, 2013 (*see* AR. 31-80). On April 29, 2014, the second ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 9-30).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ err by failing to show medical improvement in the conditions the prior ALJ found to be

disabling and which met a listing; (2) Did the ALJ err by giving the assessment by

Christina Rasmussen, Ph.D., great weight because she was given very little information

about Stewart's condition upon which she was found disabled by ALJ Strong, making it

impossible to determine medical improvement; (3) Is the credibility assessment by the

ALJ not supported by substantial medical evidence and not clear and convincing; (4) Did

the ALJ err by outright rejecting of GAF scores even though accepted by the courts; and

(5) Did the ALJ err by rejecting the lay witness evidence for improper reasons (*see* Dkt.

12, p. 1).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)).

DISCUSSION

**(1) Whether the ALJ erred by failing to show medical improvement in the conditions the prior ALJ found to be disabling and which met a listing?**

Plaintiff argues the ALJ erred in evaluating the severe impairments that were

"'present at the time' of the last finding of disability" (Dkt. 12, p. 3). Specifically,

plaintiff avers the ALJ erred by only evaluating plaintiff for personality disorder (rather

than borderline personality disorder) and history of cerebrovascular accident (rather than

cognitive disorder, not otherwise specified) (Dkt. 12, pp. 4-5).

Once a claimant is found disabled, a presumption of continuing disability arises. *See Bellamy v. Secretary of Health and Human Services*, 755 F.2d 1380, 1381 (9th Cir. 1985). Although the claimant retains the burden of *proof*, this presumption shifts the burden of *production* to the Commissioner to produce evidence to meet or rebut this presumption. *Id.* Disability benefits cannot be terminated unless the Commissioner presents substantial evidence demonstrating medical improvement in the claimant's impairment so that the claimant is able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f); *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983).

The Commissioner follows specific steps in reviewing whether a recipient's disability continues. To determine whether disability continues for a recipient of SSI, the Commissioner evaluates the following steps:

(1) At step one, does the recipient "have an impairment or combination of impairments which meets or equals the severity of an impairment listed in" 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the recipient's disability will be found to continue.

(2) At step two, has there been "medical improvement as shown by a decrease in medical severity"? If not, the review proceeds to step four. If so, the review proceeds on to step three.

(3) At step three, is the medical improvement related to an increase in the recipient's "residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination"? If not, the review proceeds on to step four. If so, the review proceeds on to step five.

(4) At step four, if there has been no medical improvement or if such improvement is not related to an increase in the recipient's residual functional capacity, do any of the exceptions apply? If no such exception applies, the recipient's disability will be found to continue.

(5) At step five, if medical improvement is related to the recipient's residual functional capacity or if one of the exceptions in 20 C.F.R. § 404.1594(d) applies, are all of the recipient's "current impairments in combination" severe? If the residual functional capacity assessment conducted at step three "shows significant limitation" in the recipient's "ability to do basic work activities," the review proceeds on to step seven. If there is no significant limitation, the recipient's impairments "will not be considered to be severe in nature," and the recipient "will no longer be considered to be disabled."

(6) At step six, if the recipient's impairment is severe, is the recipient able to engage in substantial gainful activity, and—based on the recipient's residual functional capacity—is the recipient able to perform the work he or she did in the past? If so, disability will be found to have ceased.

(7) At step seven, if the recipient is unable to do the work he or she did in the past, is the recipient able to do other work in light of his or her residual functional capacity, age, education, and past work experience? If so, disability will be found to have ceased. If not, disability will be found to continue. The Commissioner will continue to step seven even if the evidence in the recipient's file is not sufficient to make a finding about whether the claimant can perform past relevant work.

20 C.F.R. § 416.994(b)(5)(i)-(viii).

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point where she is able to perform substantial gainful activity. Whether an individual's entitlement to benefits continues depends on a two-part evaluation process: (1) whether "there has been any medical improvement in [the individual's] impairment(s)" and, if so, (2) "whether this medical improvement is related to [the individual's] ability to work." 20 C.F.R. § 416.994(b).

Under the first prong, the implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's]

impairment(s) which was present at the time of the most recent favorable medical

decision that [the individual was] disabled or continued to be disabled." 20 C.F.R. §

416.994(b)(1)(i). "A determination that there has been a decrease in medical severity

must be based on changes (improvement) in the symptoms, signs and/or laboratory

findings associated with [the individual's] impairment(s)." 20 C.F.R. § 416.994(b)(1)(i).

Furthermore, "if there has been a decrease in the severity … of the impairment(s) present

at the time of the most recent favorable medical decision," the medical improvement is

related to the individual's ability to work only if there has been a corresponding "increase

in [the claimant's] functional capacity to do basic work activities." 20 C.F.R.

§ 416.994(b)(1)(ii).

### *(a) Evaluation of Plaintiff's Impairments from the Most Recent Favorable Medical Decision Finding Plaintiff Disabled*

Here, the first ALJ determined that plaintiff was disabled with the severe

impairments of bipolar disorder, borderline personality disorder, anxiety disorder,

attention deficit hyperactivity disorder, cognitive disorder, not otherwise specified, and

polysubstance abuse in remission (AR. 85-89). The first ALJ also determined plaintiff

met a listing under 12.04 (affective disorders) and 12.08 (personality disorders) (*see* AR.

87-88). In his cessation analysis to determine whether plaintiff's disability ended, the

second ALJ found that plaintiff has the severe impairments of history of cerebrovascular

accident, bipolar affective disorder, anxiety disorder, posttraumatic stress disorder,

personality disorder, and substance abuse disorder (AR. 14). The second ALJ then

determined that plaintiff's "current impairments have not met or medically equaled a

1   listing since November 1, 2011" (AR. 15). In addition, the second ALJ determined that

2   "as of November 1, 2011, there has been a decrease in medical severity of the

3   impairments" present at the time of the most recent favorable medical decision, also

4   referred to as the comparison point decision ("CPD"). Plaintiff argues that the ALJ

5   improperly considered plaintiff's current impairments, rather than the impairments

6   present at the time of the favorable disability decision, to determine whether medical

7   improvement has occurred. The undersigned agrees.

8        Although the second ALJ stated that "the medical evidence supports a finding that

9   … there has been a decrease in medical severity of the impairments present at the time of

10  the CPD" (*see* AR. 16), the ALJ did not specifically consider all of the impairments

11  present at the time of the most recent favorable disability determination. As noted by

12  plaintiff, the ALJ did not discuss borderline personality disorder, attention deficit

13  hyperactivity disorder, or cognitive disorder, not otherwise specified—diagnoses present

14  in the favorable decision (*see* AR. 87)—when assessing plaintiff's current severe

15  impairments, nor did he discuss those impairments when he determined that medical

16  improvement has occurred (*see* AR. 14-24). As noted above, medical improvement is

17  "any decrease in the medical severity of [the individual's] impairment(s) *which was*

18  *present at the time of the most recent favorable medical decision.*" 20 C.F.R. §

19  416.994(b)(1)(i) (emphasis added); *see also Kennedy v. Astrue*, 247 F. App'x 761, 765

20  (6th Cir. 2007) (citing 20 C.F.R. § 404.1594(b)(1), the substantially similar statute for

21  evaluation under disability insurance benefits). The Court finds the ALJ erred by failing

22

23

24

to consider all of plaintiff's severe impairments in determining whether medical improvement has occurred.

Defendant argues that the ALJ specifically considered all of the severe impairments present at the CPD (*see* Dkt. 17, pp. 3-4). However, without discussion of those severe impairments, the Court cannot determine whether the ALJ actually considered all of the severe impairments. As an initial matter, the ALJ did not discuss plaintiff's attention deficit hyperactivity disorder in making his finding regarding her current severe impairments (*see* AR. 15-17). In addition, as noted by plaintiff, personality disorder and borderline personality disorder are not the same diagnoses. *See* Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM–IV–TR") at 685 (noting that there are "10 specific Personality Disorders" including "Borderline Personality Disorder"). Similarly, cognitive disorder, not otherwise specified is a different diagnosis than a history of cerebrovascular accident. *Compare* DSM-IV-TR at 179-80 (describing Cognitive Disorder Not Otherwise Specified) *with* Stedmans Medical Dictionary 4460 (describing cerebrovascular accident as "an imprecise term for cerebral stroke"). Thus, the second ALJ did not evaluate the same impairments the first ALJ found severe.

Defendant also argues that "the ALJ clearly established medical improvement because the medical evidence he reviewed provided substantial evidence to support a finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listing." However, according to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision

1   based on the reasoning and actual findings offered by the ALJ - - not *post hoc*

2   rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*

3   *v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp*.,

4   332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d

5   1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not

6   actually relied on by the agency") (citing *Chenery Corp, supra*, 332 U.S. at 196). Nothing

7   in the evidence of record before the Court suggests that the ALJ specifically considered

8   the severe impairments present at the most recent favorable medical decision, and the

9   Court declines to entertain any post hoc rationalizations that attempt to intuit what the

10  second ALJ may have been thinking when he did not discuss all of the diagnoses when

11  finding medical improvement.

12

13              *(b) Harmless Error Standard*

14          The Court also concludes that the second ALJ's error in evaluating whether

15  plaintiff's severe impairments has improved is not harmless. The Ninth Circuit has

16  "recognized that harmless error principles apply in the Social Security Act context."

17  *Molina*, 674 F.3d at 1115 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054

18  (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation

19  in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the

20  ultimate nondisability determination' and that 'a reviewing court cannot consider [an]

21  error harmless unless it can confidently conclude that no reasonable ALJ, when fully

22  crediting the testimony, could have reached a different disability determination.'" *Marsh*

23  *v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout*, 454 F.3d at 1055-56). In

24

*Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Here, the second ALJ erred at step two of the analysis and failed to specifically address whether there has been any medical improvement in all of plaintiff's severe impairments present at the time of the most recent favorable medical decision. Because the ALJ did so, the Court cannot determine whether the ALJ properly formulated the residual functional capacity or the hypothetical posed to the vocational expert to find plaintiff's disability has ended (*see* AR. 16-25). Because plaintiff was found to be capable of performing work existing in the national economy, the error affected the ultimate disability determination and is not harmless.

**(2) Plaintiff's Remaining Assignments of Error**

The ALJ's error at step two of the cessation analysis requires remand to the Administration to properly consider whether medical improvement has occurred as to all of plaintiff's severe impairments. As the ALJ's error at step two impacts all aspects of the ALJ's decision, the ALJ is instructed to re-evaluate this entire matter on remand. Thus, it is unnecessary to address the other issues raised in plaintiff's appeal.

**(3) Whether this matter should be reversed and remanded for an award of benefits or for further administrative proceedings.**

Plaintiff contends that this matter should be reversed and remanded with a direction to reinstate disability benefits (*see* Dkt. 12, p. 14). The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen*, 80 F.3d at 1292). An award of benefits is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). Here, outstanding issues must be resolved, including whether or not plaintiff has experienced medical improvement of all of her severe impairments present at the time of the favorable disability determination. Accordingly, remand for further consideration is warranted in this matter.

1

<u>CONCLUSION</u>

2          Based on these reasons and the relevant record, the Court **ORDERS** that this

3  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

4  405(g) to the Acting Commissioner for further consideration consistent with this order.

5          **JUDGMENT** should be for Plaintiff and the case should be closed.

6          Dated this 29th day of August, 2016.

7

8          _____

9          J. Richard Creatura
           United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 13